## Johnson *versus* Crow *et al.*

1. A legislative grant to a private person, of a privilege to use a public right for his private gain, will not be deemed exclusive, unless the intent of the legislature is perfectly clear, and nothing less than a plain contract between the state and an individual, for an adequate consideration, can prevent the repeal of such a privilege.

2. Where by an Act of Assembly certain privileges are conferred upon an individual for a valuable consideration, and by a subsequent act said privileges are made exclusive without any new consideration, this second act cannot be sustained by reason of the consideration in the original grant and may be repealed.

3. By an Act of Assembly, A. was given the right to maintain a ferry and receive the tolls, in consideration that he would attend to the ferry, keep proper boats, &c. A subsequent act, without any new consideration, gave him the exclusive right to maintain a ferry within the limits named in the former act. A third act conferred upon B. the right to maintain a ferry within the same limits. *Held*, that this latter act was constitutional.

May 21st 1878. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ. SHARSWOOD, J., absent.

Appeal from the Court of Common Pleas of *Dauphin county :* Of May Term 1878, No. 187. In Equity.

Appeal of Joseph Johnson from the decree of the court overruling exceptions to and confirming the report of the master, in proceedings commenced by Johnson to restrain Isaac Crow and others from maintaining a ferry over the Susquehanna river at Millersburg, Pennsylvania.

Johnson claimed the exclusive privilege of a ferry across the river at Millersburg, and for one mile above and below his residence. He owned or had the right of landing passengers on the east side of the river. Crow and others claimed the land, with the exclusive right to the landing on the west bank. Johnson claimed through David Kreamer, who established a ferry at said point some

[Johnson *v.* Crow *et al.*]

fifty years theretofore, which had been kept up with reasonable regularity from that time and which right descended or was transferred to his sons, who after obtaining a legislative sanction, sold their interest to Johnson in 1875. On the 1st day of March 1866, an act was passed (Pamph. L. 358), giving Joseph Kreamer, his heirs and assigns, the privilege of making landings, at his own expense, on the east side of the Susquehanna river, at the borough of Millersburg, and on the lands of Isaac and Jacob Crow and William Patton, on the west side, and of having a ferry between those points. He was required to keep the landings and ferry in good order and repair, for the transportation of passengers and travellers, teams, &c., of all descriptions, and at all times, with good boats, hands, &c., and was permitted to take the same tolls heretofore charged; and a method was pointed out for paying the owners of the lands entered on, to be taken on the west side, for the damages which they may sustain, to be assessed in the same manner provided for opening private roads.

On the 15th day of April 1867 (Pamph. L. 1308), a supplement to this act was passed, giving to Joseph Kreamer, his heirs and assigns, the exclusive right and privilege of a ferry, for one mile above and one mile below his house, and all persons were prohibited from using the river, for the purpose of a ferry, under the penalty of one hundred dollars.

On the 12th day of April 1872, an act was passed, giving to Isaac Crow, his heirs and assigns, the right to establish a ferry across the Susquehanna river, from his land, on the west side, to Millersburg, on the east side, requiring him to keep up landings, boats, &c., in almost the same language as that required of Kreamer, in every particular, except as to the mode of obtaining the land and assessing the damages therefor.

Under the provisions of this act Crow and others established and maintained a ferry, and this bill in equity was filed by Johnson to restrain them from such use.

The master, to whom the bill and answer were referred, reported:

1. That the act of March 21st 1866, constituted the contract between the state and the grantee of the ferry franchise, and as the grant made by that act is not exclusive, the legislature had a right to pass the act of 1872, conferring the same privilege upon the defendants.

2. That the act of April 15th 1867, is not a contract within the meaning of the federal constitution, there being, as already found, no new consideration for its passage, but simply a gratuitous enlargement of the privilege given by the former act, and therefore a subsequent legislature may take it away, or allow it to be shared by others.

3. That the act of 1872, giving to Isaac Crow the privilege of maintaining a ferry within the limits prescribed by the acts in

[Johnson *v.* Crow *et al.*]

favor of Joseph Kreamer, does not impair any contract, and is not unconstitutional and void, and defendants are therefore fully protected by it, and cannot be restrained from maintaining their ferry.

The court, Pearson, P. J., overruled the exceptions filed to this report, confirmed the same and dismissed the bill in an opinion, inter alia, saying :—

" The sole right to a ferry probably cannot be gained by presumption in this state. The right is in the Commonwealth, against which a presumption will not run, according to the maxim *nullum tempus,* &c. There is no presumption of an exclusive grant from length of time : 8 Watts 434. The ownership of ferries over the great rivers of the state is exclusively in the Commonwealth. * * * After the numerous decisions which have been made by the courts of this country, both state and national, that a grant to a corporation or an individual, in consideration of something expected or agreed to be done by the grantee, becomes a contract, binding on the parties, it is no longer an open question. It matters not how impolitic the grant, or how small the consideration, it is binding on the public when made by the legislature ; the adequacy of the consideration or policy of the grant must be judged of by that tribunal. If there is nothing to be done or suffered by the grantee, if it is a mere gratuitous gift by the grantor, it may be revoked at pleasure. It is not a contract. Had the exclusive right to the ferry for one mile above and below the house of Kreamer been invested in the original grant, it would have been binding, as he is required, by the statute, to make landings, keep up boats and craft, suitable ferrymen, &c., to carry passengers and teams at all times.

" The doctrine is clearly laid down in the Binghampton Bridge Case, 3 Wall. 51, that such exclusive privilege in the charter is binding where it can be presumed that the bridge was built, or stock taken to construct the same in consequence of said exclusive privilege. This principle is recognised in other cases, both in the national and state courts : 16 Wall. 244. See 10 Barb. S. C. 223 ; 10 Minn. 23 ; 14 Georgia 336. The same principle applies to an exemption from taxation : 15 Wall. 458-9 ; Id. 430. Although the grant of a ferry would, without express words, preclude the state from granting another over the same spot, yet it is not thereby prohibited from authorizing another in the immediate vicinity, although it materially interfered with the business of the first : 15 Pick. 452 ; 11 Pet. 420 ; 3 Ind. 21 ; 13 Ill. 428 ; 7 N. H. 59. The grant of power to build a bridge is necessarily exclusive over the same site : Id., 61, 66 ; 17 Conn. 40. We may well doubt the soundness of the last-cited case, as the new bridge was for the exclusive passage of railroad cars, and could not interfere with the travel over the other bridge.

" The state, however, cannot relinquish any of her powers conferred for the public good without an equivalent, and if it grants a

[Johnson *v.* Crow *et al.*]

privilege only, it may be revoked at any time. To make it a contract there must be an equivalent: Cooley's Con. Lim. 280, 281, 282. It cannot give up the right of eminent domain: Id. 281, 282, 283, 343; Greenl. n. to 2 Cruise, p. 67; 14 Ill. 321. Nor confer an exclusive privilege without what the legislature considered an equivalent in value to the citizens. The supplemental act of April 15th 1867, which grants to Joseph Kreamer the exclusive right and privilege of a ferry for one mile above and below his house, where his ferry at that time existed, may be of immense injury not only to the people of Millersburg, a flourishing town, but to the whole travelling public which may desire to pass that way. It grants a monopoly in perpetuity for two miles of river frontage, if the supplement can be construed to be a contract. When that whole country comes to be densely peopled the inconvenience may be felt as great as the bridge to the people of Binghamton, with its exclusive privilege along the river. These thoughtless grants of the legislature, made when the country is comparatively new, become intolerable in a future day. Yet, if a contract, we must sustain it. There is nothing whatever contracted or ordered to be done by the supplement in consideration of the privilege. It is a mere gift, which may be reclaimed and revoked by the legislature at any time. It is urged, however, that Kreamer had expended several hundred dollars on the ferry after this supplement was passed, and before the grant to the Crows by the Act of 1872. Everything which could be required for a ferry, either for public convenience or private benefit, was enjoined by the Act of 1866. It is not shown that this work was in addition, and if it was, it was merely voluntary, outside of the requirements of the law. If a man does merely what he was required by his contract to do, in consequence of some new promise, it furnishes no new consideration. If A. promises B. that if he will immediately pay him the one-half of the sum then due on his bond he will forgive him the residue, it furnishes no bar to the recovery of the whole. Kreamer has failed to show that he expended a dollar in consequence of this supplement beyond and above what he was bound to do before its enactment, consequently there is no consideration for this additional privilege. It could be revoked or disregarded by the legislature at any time. Was it revoked? That depends on the proper construction of the Act of April 12th 1872, Pamph. L. 1130. This statute does not, in terms, repeal the Act of 1867, but it is entirely inconsistent with its provisions. It substantially revokes the supplement on which the claim is founded, by entirely disregarding it, and conferring the same privilege on another. The rights granted by it are in effect conferred on the Crows, who owned the land on the west side of the river, and who claimed the privilege of landing their boats at any place along the Millersburg front, not actually occupied by Kreamer or his grantee. This grant is an implied

repeal of that given to Kreamer by the supplement. Implied repeals are not to be favored, but when a later law is entirely inconsistent with an earlier one, the latter is at an end, according to the legal maxim, *leges posteriores priores contrarias abrogant*. The legislature could not by a repeal affect the rights of Kreamer, under the Act of 1866, it was a contract; the Act of 1867 conferred a mere gift, which could be revoked, and was by the grant to the Crows."

This appeal was taken by complainant, who assigned for error the dismissal of his bill.

*J. W. Simonton* and *A. J. Herr*, for appellant.—A grant of a ferry franchise, if exclusive in terms, is a contract on the part of the legislature making the grant, if accepted and acted upon, the obligation of which cannot be impaired by a subsequent grant to another person which would interfere with the original grant: Charles River Bridge *v.* Warren Bridge, 11 Pet. 420. The Acts of 1866 and 1867 are to be construed together, and are, as a whole, to be taken as the grant and contract in this case, the obligation of which it was not in the power of the legislature to impair by the Act of 1872, because of the clause in the Constitution of the United States prohibiting the passage of any law impairing the obligation of contracts: The Binghampton Bridge, 3 Wall. 51; Cooley's Const. Law 281, and cases there cited; The Easton Bank *v.* Commonwealth, 10 Barr 442; Humphreys *v.* Peques, 16 Wall. 244; Tomlinson *v.* Jessup, 15 Id. 454; Home of the Friendless *v.* Rouse, 8 Id. 430; Washington University *v.* Rouse, 8 Id. 439; Dartmouth College *v.* Woodward, 4 Wheat. 699. The legislature having granted to the appellant the right to the use of the river, within certain defined bounds, for a ferry, cannot grant, and have not title to grant, any right or use of the same river for the same purpose within the same defined limits. Not on the ground that there is any implied contract that the first grantee of the franchise shall have exclusive right within such limits as might affect the amount of tolls which he might receive, but on the principle that all the right and title which was in the state passed by the first grant: Fletcher *v.* Peck, 6 Cranch 87.

*Eugene Snyder* and *W. A. Sponsler*, for appellees.—The legislature could not grant to Kreamer the right to land on another man's property. Such a grant would be the taking of private property for private use: Chambers *v.* Furry, 1 Yeates 170; Cooper *et al. v.* Smith, 9 S. & R. 32; Chess *v.* Manown, 3 Watts 219; Conway *v.* Taylor's Executors, 1 Black 629. Two or more ferries may be granted between certain points on the same waters; Gates *v.* Anderson, 13 Ills. 413; Bush *v.* Peru Bridge Co., 3 Ind. 21; Fay *et al.*, Petitioners, 15 Pick. 243; Fanning *v.* Gregoire, 16 How.

[Johnson v. Crow et al.]

524; Charles River Bridge v. Warren Bridge, 11 Pet. 420; Turnpike Co. v. State, 3 Wall. 216; East Hartford v. Hartford Bridge Co., 16 How. 524.

Grants of exclusive privileges by the state are not favored, and can only be sustained on good considerations. The exclusive grant in the Act of 1867 was a mere gratuity, and had no consideration to support it. It was not a contract, therefore, and within the protection of the 10th section of the 1st article of the Constitution of the United States: Dartmouth College v. Woodward, *supra;* Rector of Christ Church v. Philadelphia, 24 How. 302; Tricker v. Ferguson, 22 Wall. 524; West Wisconsin Railroad v. Supervisors of Trempeleau County, 3 Otto 595; Providence Bank v. Billings, 4 Pet. 561; Easton Bank v. Commonwealth, *supra.*

The judgment of the Supreme Court was entered May 27th 1878,

PER CURIAM.—The opinion of the learned judge of the Common Pleas sufficiently vindicates his conclusion. The great rivers of the Commonwealth are held as the common property of all the citizens of the state for public use. No presumption will arise that the legislature intends to part with any portion of the public domain, unless upon the most clear and express terms. A privilege to a private person to use the public right for his private gain, will not be deemed exclusive unless the intent of the legislature is perfectly clear. All these great rights are held in trust for the general good, and the representatives of the people must be deemed to be not guilty of a breach of this trust, or a dereliction of duty. Hence nothing less than a plain contract between the state and the individual for an adequate consideration can bind the hands of the state and prevent the repeal of a mere privilege. Conceding for the occasion merely that the Act of 21st March 1866, contained a contract for a perpetual privilege granted to Joseph Kreamer to keep a ferry, over the Susquehanna at Millersburg, it contained no grant of an exclusive privilege. The privilege, therefore, was subject to the undoubted right to grant similar privileges to others. Therefore, when by the Act of April 15th 1867, the legislature made the right of Joseph Kreamer exclusive, it conferred a new right, which it protected by a penalty upon others infringing it; but required no new duty, and no compensation to the state. The mere fact that the title of the act was, "A supplement to an act, &c," does not import a consideration. It was not an enlargement of powers under the former act to give it further effect, and to be taken as a part of the former grant, but it was an enlargement by way of a new and greater grant. No consideration appearing for the new contract, and the state desiring to protect Kreamer merely by a penalty, it would be contrary to the rule of presumptions as to duties and powers of the legislature to suppose a binding contract

under the Act of 1867. The Act of 1872, conferring a ferry right on Isaac Crow, was therefore no unconstitutional interference with the rights of Joseph Kreamer.

Judgment affirmed.